# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| REGINALD BROWN, #08088-025, ) </br> ) </br> Petitioner, ) </br> ) </br> vs. ) </br> ) </br> T. G. WERLICH, ) </br> ) </br> Respondent. ) | Case No. 17-cv-0058-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Petitioner Reginald Brown, an inmate in the Bureau of Prisons, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc. 1). In 2012, Brown was sentenced to a 180 month term of imprisonment after pleading guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). His sentence was enhanced pursuant to the Armed Career Criminal Act ("ACCA") based, in part, on a 1996 Missouri felony conviction for distribution, delivery, manufacture or production of a controlled substance pursuant to Mo. Rev. Stat. § 195.211 (1989).[1] 18 U.S.C. § 924(e)(2)(A)(ii). Brown now invokes *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), to challenge the enhancement based on this prior conviction and argue that he is entitled to be resentenced without the ACCA enhancement. Specifically, Brown argues that his 1996 Missouri conviction does not qualify as a "serious drug offense" within the meaning of the ACCA.

---

[1] As part of a revision of Missouri's criminal code, this section was amended and renumbered as Mo. Rev. Stat. § 579.055, effective January 1, 2017. 2014 Mo. Legis. Serv. S.B. 491 (VERNON'S) (West's No. 9). The statute will be referred to by its citation at the time of Brown's 1996 conviction throughout the rest of this Order.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Brown pleaded guilty to one count of Felon in Possession of a Firearm pursuant to 18 U.S.C. § 922(g)(1) on August 5, 2011. *United States v. Brown*, Case No. 10-cr-30165-DRH, Docs. 25, 27 (S.D. Ill. Aug. 8, 2011). Brown pleaded guilty without entering into a formal plea agreement. *Id*. The Presentence Report ("PSR") determined that Brown had at least three qualifying ACCA predicate felony convictions and was subject to a mandatory minimum sentence of at least 15 years (180 months) imprisonment. *Id*. at Doc. 35, p. 12. Among these predicate convictions was a 1996 Missouri conviction for distribution, delivery, manufacture, or production of a controlled substance.[2] *Id*. at p. 6. Neither Brown nor his counsel objected to any part of the PSR. *Id*. at Doc. 42, p. 5. Brown was ultimately sentenced to 180 months' imprisonment on January 13, 2012. *Id*. at Docs. 36, 38.

Brown did not file a direct appeal. He did, however, file a motion under 28 U.S.C. § 2255 in this district, asserting that his trial counsel provided ineffective representation in connection with his sentencing. The motion was denied. *Brown v. United States*, Case No. 15-cv-1385-DRH, Doc. 5 (S.D. Ill. Feb. 11, 2016). Brown appealed to the Seventh Circuit, but his appeal was dismissed for failure to pay the required docketing fee after being denied leave to proceed *in forma pauperis* on appeal. *Brown v. United States*, Case No. 16-2392, Doc. 5-1 (7th Cir. Aug. 23, 2016).

## APPLICABLE LEGAL STANDARDS

Generally, petitions for writ of habeas corpus under 28 U.S.C. § 2241 may not be used to raise claims of legal error in conviction or sentencing, but are instead limited to challenges regarding the execution of a sentence. *See Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998).

---

[2] Mo. Rev. Stat. § 195.211 (1989).

Aside from the direct appeal process, a prisoner who has been convicted in federal court is generally limited to challenging his conviction and sentence by bringing a motion pursuant to 28 U.S.C. § 2255 in the court which sentenced him. A Section 2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). And a prisoner is generally limited to only *one* challenge of his conviction and sentence under Section 2255. A prisoner may not file a "second or successive" Section 2255 motion unless a panel of the appropriate court of appeals certifies that such motion contains either (1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

It is possible, however, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under Section 2241. 28 U.S.C. § 2255(e) contains a "savings clause" which authorizes a federal prisoner to file a Section 2241 petition where the remedy under Section 2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). *See United States v. Private*, 300 F.3d 792, 798-99 (7th Cir. 2002). The Seventh Circuit construed the savings clause in *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998): "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense."

The Seventh Circuit has explained that, in order to fit within the savings clause following *Davenport,* a petitioner must meet three conditions. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Second, he must show that he relies

on a decision that he could not have invoked in his first Section 2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). *See also Brown v. Rios*, 696 F3d 638, 640 (7th Cir. 2012).

Since *Davenport*, the Seventh Circuit has made it clear that "there must be some kind of structural problem with section 2255 before section 2241 becomes available. In other words, something more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied." *See Webster v. Daniels*, 784 F.3d 1123, 1136 (7th Cir. 2015).

## ANALYSIS

Brown, invoking *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), challenges the use of his 1996 Missouri controlled substance conviction as a basis for his ACCA sentencing enhancement. The sentencing court found this conviction to be a "serious drug offense" under the ACCA because it involved manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance. 18 U.S.C. § 924(e)(2)(A)(ii). Specifically, Brown argues that because the Missouri statute that he was convicted under criminalizes the "sale" of a controlled substance, it is broader than the ACCA's definition of serious drug offense which only includes offenses involving manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance. (Doc. 1, pp. 9–10). Thus, Brown argues that his 1996 Missouri controlled substance conviction was improperly considered a predicate serious drug offense for the purposes of his ACCA sentence enhancement. (*Id*.).

The ACCA's definition of a "serious drug offense" is as follows:

(i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter

4

> 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law[.]

18 U.S.C. § 924(e)(2)(A). Because Brown's prior conviction was for a violation of Missouri law, subsection (ii) of this statute applies here.

As a preliminary matter, it is doubtful that Brown's petition fits within the savings clause as set forth in *Davenport*. The first of the *Davenport* requirements is reliance on a new statutory interpretation case. While Brown does cite to *Mathis*, a closer reading reveals that his argument does not arise out of that decision, and his petition therefore does not actually rely on *Mathis*.

*Mathis* concerns the method a court should use to determine whether a defendant's prior conviction qualifies under the ACCA's "enumerated clause," which refers to the crimes (burglary, arson, or extortion) that are specifically named as violent felonies in Section 924(e)(2)(B). That clause is not implicated here. The analysis would require the court to determine whether the elements of the prior conviction match up with the elements of the "generic" version of the enumerated crime (e.g., determining whether the elements of a given state's burglary statute match up with the generic version of burglary). *Mathis*, 136 S. Ct. at 2248. Brown's case involves the definition of a serious drug offense under the ACCA, not the definition of a violent felony. The definition of serious drug offense is structured differently than the definition of violent felony because there is no statutory list of enumerated crimes that constitute serious drug offenses. Given this significant difference, it is difficult to see how *Mathis* applies here, because there is no generic crime for the Court to compare to Brown's 1996 conviction.

The Seventh Circuit has not explicitly considered whether or how *Mathis* applies to determining whether a prior conviction qualifies as a "serious drug offense" in any published cases, within the meaning of 18 U.S.C. § 924(e)(2)(A)(ii). The Court is, however, aware of recently published Seventh Circuit precedent where the categorical approach of *Mathis* (which originates from *Taylor v. United States*, 495 U.S. 575, 600-02 (1990)), was applied to a different federal recidivism statute, *United States v. Elder*, 900 F.3d 491, 501 (7th Cir. 2018), as well as a recent unpublished decision that applied the categorical approach to find a past conviction for cocaine delivery under Indiana law was a "serious drug offense" under Section 924(e)(2)(A)(ii). *United States v. Anderson*, – F. App'x –, 2019 WL 1306309, at *4 (7th Cir. Mar. 21, 2019). These cases may indicate the Seventh Circuit's willingness to apply *Mathis* to Section 924(e)(2)(A)(ii) on direct review,[3] but they do not establish *Mathis*'s availability on collateral review, as is the case here. This Court does not ultimately need to decide those questions, however, because even applying *Mathis*, Brown's claim fails on the merits.

The predicate conviction Brown takes issue with is his 1996 violation of Mo. Rev. Stat. § 195.211(1) (1989). That statute provided:

> Except as authorized by sections 195.005 to 195.425 and except as provided in section 195.222, it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance.

*Id*. Some of the terms used in § 195.211(1) were defined in another Missouri statute, Mo. Rev. Stat. § 195.010 (1989). As is relevant here, "deliver" was defined as "the actual, constructive, or attempted transfer from one person to another of drug paraphernalia or of a controlled substance, or an imitation controlled substance, whether or not there is an agency relationship, and includes

---

[3] *See Elder*, 900 F.3d at 493–94; *Anderson*, 2019 WL 1306309 at *1.

a sale." *Id*. at § 195.010(8). "Sale" includes "barter, exchange, or gift, or offer therefor, and each such transaction made by any person, whether as principal, proprietor, agent, servant or employee." *Id*. at § 195.010(38).

Brown argues that the Missouri statute criminalizes more behavior than the ACCA's definition of a serious drug offense because the Missouri statute criminalizes the "sale" of a controlled substance, while the ACCA refers only to drug offenses involving "manufacturing" or "distributing" a controlled substance. (Doc. 1, pp. 9–10). This argument is a mechanical one, focusing on the absence of the word "sale" from Section 924(e)(2)(A)(ii) without considering the meaning of the language of either the Missouri statute or the ACCA provision. Brown makes no attempt to explain why the absence of the word "sale" from the ACCA means that MO. REV. STAT. § 195.211(1) is broader than a serious drug offense within the meaning of the ACCA other than merely pointing at the absence of "sale" and the inclusion of "distributing" in § 924(e)(2)(A)(ii).

The ACCA refers to serious drug offenses involving the distribution of controlled substances. The Missouri statute refers to both distribution and delivery of controlled substances. The Eighth Circuit has rejected the argument that "distributing" in the ACCA means something meaningfully different than "deliver" in the Missouri statute, noting that MO. REV. STAT. § 195.010(12) defines distribute as "to <u>deliver</u> other than by administering or dispensing a controlled substance." (emphasis added). In other words, distribute and deliver in the Missouri statute are redundant, and a violation of the Missouri statute is a serious drug offense within the meaning of the ACCA. *United States v. Brown*, 408 F.3d 1016, 1018 (8th Cir. 2005); *see also United States v. Long*, 320 F.3d 795, 802 (8th Cir. 2003) (conviction for "delivery" of a controlled

substance is a serious drug offense under the ACCA). Nothing in *Mathis* calls into question the validity of the holding in *Brown*.[4]

"Sale," as defined in MO. REV. STAT. § 195.010(38), is also not any broader than "distribution," as construed by Missouri law. Sale "includes barter, exchange, or gift, or offer therefor," each of which involves distribution. Notably, the Missouri controlled substances statute does not criminalize a mere offer without intent to sell. *United States v. Thomas*, 886 F.3d 1274, 1277 (8th Cir. 2018), (citing *State v. Sammons*, 93 S.W.3d 808, 811 (Mo. Ct. App. 2002)). Therefore, the reasoning of cases such as *United States v. Madkins*, 866 F.3d 1136 (10th Cir. 2017), and *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), does not apply here. The obvious intent of Section 924(e)(2)(A)(ii) is to exclude state laws that criminalize simple possession. The Missouri statue at issue does not criminalize simple possession. Thus, this Court concludes that MO. REV. STAT. § 195.211(1) fits squarely within the ACCA description of a serious drug offense, *i.e.*, a state law "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). As such, Brown's Missouri drug conviction was properly used as a predicate offense for the career-criminal enhancement of his federal sentence.

---

[4] There are also several cases that, while not specifically analyzing MO. REV. STAT. § 195.211, have found that state convictions for both "selling" and "delivering" controlled substance are properly considered within the ACCA's definition of serious drug offenses. *See, e.g.*, *McNeill v. United States*, 563 U.S. 816, 824 (2011) (convictions for selling cocaine and possessing cocaine with intent to sell were serious drug offenses within the meaning of the ACCA); *United States v. Rodriquez*, 553 U.S. 377, 380–85 (2008) (prior conviction for delivery of a controlled substance qualified as serious drug offense under the ACCA); *United States v. Anderson*, – F. App'x –, 2019 WL 1306309, at **3–4 (7th Cir. Mar. 21, 2019) (prior conviction for cocaine delivery "fits squarely within the scope of [the ACCA]'s prohibition on "distributing.").

CONCLUSION

For the reasons set forth above, Brown's petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **DENIED**. This action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

If Brown wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1(A). A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Brown plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Brown does choose to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

It is not necessary for Brown to obtain a certificate of appealability from this disposition of his Section 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

**IT IS SO ORDERED.**

**DATED:** May 22, 2019

*Nancy J. Rosenstengel*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**